FILED

2015 Sep-22  AM 09:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **WENDY GAYLE BOOTH,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  7:14-cv-1281-MHH** |
| | } | |
| **CAROLYN W. COLVIN,** | } | |
| **Commissioner of the** | } | |
| **Social Security Administration,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), plaintiff Wendy Gayle Booth seeks judicial review of a final adverse decision of the Commissioner of Social Security.  The Commissioner denied Ms. Booth's claims for a period of disability, disability insurance benefits, and supplemental security income.   After careful review, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

Ms. Booth applied for a period of disability, disability insurance benefits, and supplemental security income benefits on March 22, 2011.  (Doc. 6-6, pp. 4, 6).  Ms. Booth alleges that her disability began on February 27, 2011.  (Doc. 6-6, p. 2).  The Commissioner denied Ms. Booth's claims on June 28, 2011, (Doc. 6-5, p.

2), and Ms. Booth requested a hearing before an Administrative Law Judge (ALJ). (Doc. 6-5, p. 9). Like the Commissioner, the ALJ denied Ms. Booth's application for benefits. (Doc. 6-3, p. 21). On May 3, 2014, the Appeals Council declined Ms. Booth's request for review. (Doc. 6-3, p. 2). As a result, the Commissioner's decision became final. (Doc. 6-3, p. 2). That decision is a proper candidate for this Court's judicial review. *See* 42 U.S.C. §§ 405(g) & 1383(c).

## II.   STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted). If substantial evidence supports the ALJ's decision, the

Court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r of Soc. Sec.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## III.   SUMMARY OF THE ALJ'S DECISION

Ms. Booth carries the burden of demonstrating that she is disabled as that term is defined by the Social Security Act. *Russell v. Astrue*, 331 Fed. Appx. 678, 680 (11th Cir. 2009) (citing *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984)). To determine whether a claimant has established that she is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ examines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

3

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Ms. Booth has not engaged in substantial gainful activity since February 27, 2011.  (Doc. 6-3, p. 26).  The ALJ determined that Ms. Booth suffers from the following severe impairments: osteoarthritis, lumbar degenerative disc disease, sleep apnea, hypertension, type II diabetes, asthmatic bronchitis, and obesity.   (Doc. 6-3, p. 26). Nevertheless, the ALJ concluded that Ms. Booth does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Doc. 6-3, p. 27).

The ALJ also determined that Ms. Booth retains the following residual functional capacity:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is precluded from climbing ladders, ropes or scaffolds; however, she can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl.  The claimant can sustain no more than occasional exposure to extreme cold or heat or to irritants such as fumes, odors, dust, gases, chemicals, poorly ventilated areas.  The claimant should avoid any exposure to unprotected heights and the operation or control of hazardous moving machinery.

(Doc. 6-3, p. 28).  Based on this RFC, the ALJ concluded that Ms. Booth is able to work jobs that she previously has held as a cashier, a manager in the fast food service, or a fast food worker, as those jobs are classified and consistent with the Dictionary of Occupational Titles.  The ALJ noted that Ms. Booth ultimately may

4

not perform the exact tasks that she previously performed, but she still may hold the same types of jobs. (Doc. 6-3, p. 33). The ALJ relied in part on the testimony of a vocational expert in reaching his conclusion that Ms. Booth is capable of performing her past relevant work. (Doc. 6-3, p. 33). Accordingly, the ALJ determined that Ms. Booth is not disabled as defined in the Social Security Act. (Doc. 6-3, p. 33).

## IV.   ANALYSIS

Ms. Booth argues that she is entitled to relief from the ALJ's decision because the ALJ did not properly weigh the opinion of Dr. Bruce Pava, M.D., an examining physician. (Doc. 8, pp. 7-8). The Court disagrees.

An ALJ must consider every medical opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 931 (11th Cir. 2013) (quoting *Winschel*, 631 F.3d at 1179)). In the absence of sufficient particularity, the Court "cannot determine whether substantial evidence supports the ALJ's decision…." *Denomme v. Comm'r of Soc. Sec.*, 518 Fed. Appx. 875, 877 (11th Cir. 2013) (citing *Winschel*, 631 F.3d at 1179). Though an ALJ typically gives an examining physician's opinion more weight than the opinion of a non-examining physician, the ALJ owes no deference to the opinion of a one-time examining physician such as Dr. Pava.

*See Eyre v. Comm'r of Soc. Sec.*, 586 Fed. Appx. 521, 523 (11th Cir. 2014) (citing *McSwain v. Bowen,* 814 F.2d 617, 619 (11th Cir. 1987)); *see also Gray v. Comm'r of Soc. Sec.*, 550 Fed Appx. 850, 854 (11th Cir. 2013). "It is not [] unlawful to discredit the opinion of an examining or treating physician, so long as the [ALJ] specif[ies] what weight is given to a treating [or examining] physician's opinion and any reason for giving it no weight." *Russell*, 331 Fed Appx. at 681 (internal quotations omitted).

In this case, the ALJ considered the opinions of three medical professionals in reaching his decision:   (1) Dr. Bruce M. Pava, M.D., an examining physician who saw Ms. Booth on one occasion, (Doc. 6-8, pp. 52-57); (2) Dr. Robert Estock, M.D., an examining source who performed a psychiatric evaluation of Ms. Booth on June 27, 2011, (Doc. 6-8, pp. 58-71); and (3) Dr. Robert Heilpern, M.D., a non-examining consultant who completed a physical residual functional capacity assessment for Ms. Booth on June 27, 2011, (Doc. 6-8, pp. 72-79).  (*See* Doc. 6-3, p. 32).

Dr. Pava conducted a physical examination of Ms. Booth on May 24, 2011. (Doc. 6-8, p. 52).  Based on this examination, Dr. Pava observed:

> Gait is normal.  Tandem gait is normal.  The patient is able to walk on toes and heels and rise from a deep squatting position without difficulty.   The patient has full range of motion of all joints, extremities, and spine.   There is no obvious joint deformity or extremity atrophy.

(Doc. 6-8, pp. 55-56).  Dr. Pava also found that Ms. Booth's pulmonary function studies were "[e]ssentially normal."  (Doc. 6-8, p. 56).  After reviewing the medical evidence of record, Dr. Pava concluded that Ms. Booth's "history and physical examination show no contraindication to work requiring mild exertion." (Doc. 6-8, p. 56).

The ALJ assigned Dr. Pava's opinion "partial weight."  (Doc. 6-3, p. 32). The ALJ explained that he "considered the opinion of consultative examiner, Bruce Myles Pava, M.D., and assigns his opinion partial weight, as [Dr. Pava] noted that the claimant's history and physical examination show no medical contraindication to work requiring mild exertion.  'Mild exertion' is not a defined term."  (Doc. 6-3, p. 32).  The Court finds that the ALJ clearly specified the weight he accorded Dr. Pava's opinion, and the ALJ explained his reason for assigning that weight.  The Court finds no error in the ALJ's decision to accord Dr. Pava's opinion partial weight.

Moreover, even if the ALJ erred by failing to provide a more detailed explanation for his decision to give Dr. Pava's opinion partial weight, any potential error was harmless for a number of reasons.  *See Denomme*, 518 Fed. Appx. at 878.  First, the ALJ was not required to defer to Dr. Pava's opinion because Dr. Pava examined Ms. Booth only once.  *See Id.*; *Eyre*, 586 Fed. Appx. at 523.  In addition, the ALJ did consider and give weight to Dr. Pava's s findings and

observations.   Indeed, the ALJ cited Dr. Pava's "observations of normal gait, normal pulses and reflexes, and an absence of edema" in determining that Ms. Booth does not have an impairment or combination of impairments that equals one of the listed impairments from the regulations.   (Doc. 6-3, p. 27).   Also, in determining Ms. Booth's RFC, the ALJ cited Dr. Pava's finding that "although [Ms. Booth] gave only fair effort [], she had an essentially normal [pulmonary] study."  (Doc. 6-3, p. 31).   The ALJ simply decided to give Dr. Pava's opinion partial weight because Dr. Pava used an undefined term to describe the level of exertion that Ms. Booth could use at work.

And even if the ALJ had accorded Dr. Pava's opinion substantial weight, doing so would not necessarily have led the ALJ to conclude that Ms. Booth is disabled.   (*See* Doc. 8, pp. 7-8). Ms. Booth argues that Dr. Pava's opinion establishes a disabling impairment by limiting her to work requiring no more than "mild exertion."  (Doc. 8, p. 7).   Ms. Booth asserts that limitation precludes her from all work because "even sedentary work requires lifting, carrying, and standing requirements beyond 'mild exertion.'"  (Doc. 8, p. 7).   In support of this argument, Ms. Booth cites 20 C.F.R. §§ 404.1567(a) and 416.967(a), regulations which contain identical definitions that read as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.   Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often

necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a) and 416.967(a).  This definition does not mention the term "mild exertion," and it appears to be conjecture on Ms. Booth's part that mild exertion precludes even sedentary work because none of the listed activities in the definition of sedentary work obviously exceeds the possible meaning of the term "mild exertion." [1]  As a result, Ms. Booth's argument does not persuade the Court that Dr. Pava's opinion establishes that she is disabled as defined by the Social Security Act.

Ms. Booth also contends that the ALJ erred by failing to contact Dr. Pava to ask him to clarify his opinion and the meaning of the term "mild exertion."  She cites 20 C.F.R. §§ 404.1519p(b) and 416.919p(b) in support of her argument. (Doc. 8, p. 8).  The regulations that Ms. Booth cites are identical and provide that "[i]f the report [of the consultative examination] is inadequate or incomplete, [the

_____

[1] The phrase "mild exertion" also is not mentioned in the regulatory definition of "light work":

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b) and 416.967(b).

9

ALJ], will contact the medical source who performed the consultative examination, give an explanation of [his] evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report."   20 C.F.R. §§ 404.1519p(b) and 416.919p(b).

Beyond the ALJ's comment that "[m]ild exertion is not a defined term," there is no indication that the ALJ found Dr. Pava's report to be inadequate or incomplete.  (*See* Doc. 6-3, p. 32).  Indeed, a consultative examination report, such as Dr. Pava's report, is not considered incomplete if it does not include a statement about what the claimant can still do despite her impairments.   20 C.F.R. §§ 404.1519n(c)(6) and 416.919n(c)(6); *see also Davison v. Astrue*, 370 Fed. Appx. 995, 998 (11th Cir. 2010) (rejecting a claimant's argument that an examining physician's report was incomplete because it failed to explain a prohibition against "heavy lifting") (citing 20 C.F.R. §§ 404.919n(c)(6)).   Accordingly, Dr. Pava's report was not inadequate or incomplete for failing to define "mild exertion." Because Dr. Pava's report was not inadequate or incomplete, the ALJ did not have to contact Dr. Pava to ask that Dr. Pava supplement or clarify his report.  *See* 20 C.F.R. §§ 404.1519n(c) and 416.919n(c); *Davison*, 370 Fed. Appx. at 998.

Although the ALJ has a responsibility to develop the record, "the burden is on the claimant to show that she is disabled and, therefore, she is responsible for producing evidence to support her application. *McCloud v. Barnhart*, 166 Fed

10

Appx. 410, 418 (11th Cir. 2006).[2]  With respect to an ALJ's responsibility to develop the record by re-contacting examining physicians, the Eleventh Circuit has stated:

> In making disability determinations, the Commissioner considers whether the evidence is consistent and sufficient to make a determination. If it is not consistent, the Commissioner weighs the evidence to reach her decision. If, after weighing the evidence, the Commissioner cannot reach a determination, then she will seek additional information or recontact the physicians.

*Johnson v. Barnhart*, 138 Fed. Appx. 268, 270-71 (11th Cir. 2005) (citing 20 C.F.R. § 404.1527(c)).  Here, the evidence was consistent and sufficient for the ALJ to make an RFC finding and a determination that Ms. Booth was not disabled; therefore, the ALJ had no duty to seek additional information from the examining physicians.

In making his RFC finding, the ALJ considered and discussed the medical evidence of record, both favorable and unfavorable, the opinions of medical professionals, and Ms. Booth's subjective allegations of pain.  (Doc. 6-3, pp. 28-32).  The ALJ then fashioned an RFC that included appropriate and credible restrictions based on his review of the evidence.  Thus, substantial evidence

---

[2] In this case, the ALJ tried to develop the record by asking that Ms. Booth submit several additional medical records that the ALJ considered necessary to a determination of disability, and by allotting Ms. Booth and her attorney extra time to submit the requested records.  (Doc. 6-3, pp. 70-71).

supports the ALJ's conclusion that Ms. Booth could engage in a limited range of light work.

## V.     CONCLUSION

For the reasons discussed above, the Court finds that the ALJ's decision is supported by substantial evidence, and the ALJ applied proper legal standards. The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner.   Accordingly, the Court affirms the Commissioner's decision denying Ms. Booth's claim for benefits.   The Court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this September 22, 2015.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE